Lee PORTER, Lee's Home Inspection Services, Appellant,

v.

JOY REALTY, INC., and Joyce Overdorff, Appellees.

Superior Court of Pennsylvania.

Argued Sept. 29, 2004.
Filed April 11, 2005.

---

4. Due to the disposition of this case, we need not address the other contentions in Wife's brief.

Neal A. Sanders, Butler, for appellant.

Donald J. Balsley, Pittsburgh, for appellees.

BEFORE: MUSMANNO, LALLY-GREEN, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 In this appeal, we must determine whether the "publication" element of a defamation cause of action may be proven using only circumstantial evidence when the quantity and quality of such evidence is substantial. In this case, Appellant, Lee Porter ("Porter"), claims that the circumstantial evidence which he presented in support of his defamation claim should have been deemed to be sufficient to avoid summary judgment. After careful review of the relevant law and the evidence presented in this particular case, we conclude that circumstantial evidence may be sufficient to prove "publication" in the context of defamation and indeed, in this case, the quantity and quality of the evidence presented was substantial enough to allow Appellant's cause of action to survive a motion for summary judgment. Accordingly, we reverse the order granting Joyce Overdorff's and Joy Realty, Inc.'s motion for summary judgment and remand for further proceedings.

¶ 2 The relevant facts and procedural history[1] are as follows. This case stems from a home inspection performed by Porter on October 28, 1999, for Ms. Jamie Dailey ("Dailey inspection"). Prior to the Dailey inspection, Porter had performed approximately eighty-five (85) inspections, all of which resulted in the ultimate sale of the home being inspected. (Deposition Testimony ("D.T.") of Porter, at 53; R.R. at 112). Most of these inspections were the result of referrals from Putt Real Estate (Putt) and Moreau Real Estate (Moreau). The Dailey inspection was the first Porter had performed on a property connected with Appellee Joy Realty. During the Dailey inspection, Porter discovered a defect in the basement of the home which he felt could potentially present a threat to the structural integrity of the residence. As a result of Porter's finding, the potential buyer, Ms. Dailey, decided against purchasing the property. Apparently, this result angered the realtor involved, Appellee Joyce Overdorff ("Overdorff")[2] of Joy Realty, because the next day Overdorff sent a scathing fax to Porter accusing him, *inter alia*, of performing his job in an unprofessional manner.[3] In addition, Overdorff

---

1. Summarized from both the trial court's opinion, filed December 19, 2003, and from the certified record as specified.

2. Overdorff is a long-standing member of the realtor community and is an active participant in the Indiana Board of Realtors. (D.T. of Overdorff, 8/6/01, at 63; R.R. at 184).

3. The text of the fax in question reads as follows:
Message:
You were concerned, I understand, that Joy Realty had not called for Lee Home Inspections.

This inspection is a shining example of just why Realtors suggest contractors, plumbers, and electricians to folks. This is what they do every day, most of them know their business. To take their money and not check the furnace (a screwdriver and flashlight is needed) is a waste of money. I have seen enough of these done, that with the construction courses and real estate education I have I feel that I am more informed than most home inspectors.
You absolutely scared these folks to death when you told them the porch as [sic] going to fall off because the basement wall was

made very unfavorable comments about Porter directly to Ms. Dailey when she returned to Overdorff's office to retrieve her deposit money. (D.T. of Ms. Dailey, at 33–43; R. 135–139).

¶ 3 Following the Dailey inspection and its aftermath, Porter received referrals for only six additional home inspections, all of which occurred in close temporal proximity to the Dailey inspection. (D.T. of Porter at 56; R.R. at 115). Indeed, Porter never again received any referrals from his (previously) best sources, Putt and Moreau. (Id. at 47–48; R.R. at 108–109). Further, Porter's name no longer appeared on the current list of recommended inspectors given out by agents of Kuzneski & Lockard Real Estate. (D.T. of Nancy Sherry, 3/24/03, at 78; R.R. at 158; 173). As a result of the sudden total dearth of new referrals, Porter's home inspection business literally failed. As a result, he was forced to sell his home and has since only been able to obtain a series of low paying jobs. (D.T. of Porter at 6–10; R.R. at 85–89).

¶ 4 Porter filed a complaint, and a subsequent amended complaint, alleging that Overdorff, while acting as an agent of Joy Realty, had told other agents of other real estate agencies that Porter was incompetent and unprofessional. Porter further averred that Overdorff's "publication" of these false and defamatory statements di-

rectly resulted in the loss of referrals which Porter had been receiving from these agencies and which had been the lifeblood of his inspection business. (Amended Complaint at 9; R.R. at 9). After filing an answer and conducting discovery, Appellees Overdorff and Joy Realty filed a motion for summary judgment in which they claimed that Porter had failed to present sufficient evidence of "publication" as required under the defamation statute. They alleged that Porter had not adduced any *direct* testimony regarding any alleged defamatory statements made by Overdorff to any real estate agent. The trial court agreed that the evidence of publication was insufficient as a matter of law, and granted Appellees' motion for summary judgment.[4] Porter filed a timely appeal wherein he raises the following issue:

WHETHER [THE] TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT?

(Porter's Brief at 6).

¶ 5 As a prefatory matter we note:

The awarding of summary judgment with respect to an issue of fact is supportable only when the non-moving party has failed to adduce evidence from which a factfinder could find in his/her favor. Stated alternatively, where there is evidence that would allow a jury to

---

shifting and caving in. This corner of the wall has been this way though [sic] two owners and has never changed. We have sold it twice. To further tell them that the porch roof would then pull the front of the house off is ludicrous. To use tactics like this on people shows how unprofessional you are.
(Fax from Overdorff to Porter, dated October 29, 1999, Amended Complaint Exhibit 3; R.R. at 23).

4. Joy Realty asserts that Porter failed to preserve any claim against the company because he failed to connect any alleged actions of

Overdorff to her role as an agent of the company in his brief in opposition to the defendant's motion for summary judgment. However, as acknowledged by Joy Realty, Inc., Porter did present such an argument within his amended complaint. (Joy Realty's Brief at 1). Indeed, we see no reason why Mr. Porter would have included this argument in his opposition brief to summary judgment, when the summary judgment motion in question did not involve Overdorff's role as an agent of the company. Therefore, we decline to find waiver.

find in the non-moving party's favor, summary judgment should be denied and the case should proceed to trial. Moreover, the evidence must be viewed in a light most favoring the non-movant giving that party the benefit of credibility determinations and any inferences deducible from the evidence.

*Griffin v. Central Sprinkler Corporation,* 823 A.2d 191, 199 (Pa.Super.2003) (citations omitted). Further, as reiterated in *First v. Zem Zem Temple,*[5] to avoid "summary judgment [the] appellant 'need not negate all other possible causes of an occurrence, ... or prove with mathematical certainty, to the exclusion of other possibilities, that an occurrence could only have been caused in one manner consistent with ... [the appellees'] liability.'" *Id.* at 22.

■ ¶ 6 In the case *sub judice,* Porter contends that the trial court incorrectly concluded that he had failed to meet his burden of proof regarding the "publication" element required for a successful defamation action.[6] However, as noted by the trial court, Porter acknowledges that he has no direct evidence to present of the publication of any defamatory comments by Overdorff to any of the realtors in question due to the difficulty he experienced in penetrating the "tight knit" realtor community in his attempts to secure statements or testimony from them. (Porter's Brief at 18). Instead, Porter ar-

gues that the quality and quantity of circumstantial evidence regarding publication which he adduced is enough at least to present a material issue of fact sufficient to survive summary judgment. (Porter's Brief at 19–20). Specifically, Porter points to the accusatory fax that Overdorff sent to him after the Dailey inspection, as well as Overdorff's extremely negative comments to Ms. Dailey as evidence of Overdorff's state of mind and her propensity to make defamatory comments concerning him to others. Further, Porter effectively highlights the sudden dramatic, unprecedented and otherwise inexplicable cessation of **all** of the referrals which he had been receiving regularly prior to the Dailey inspection, as uncontroverted circumstantial evidence that Overdorff had to have made defamatory statements to other realtors who had previously been providing him with referrals.

■ ¶ 7 The overarching question presented in this case is whether, under Pennsylvania law, the publication element of a defamation cause of action may be proven using only circumstantial evidence when the quantity and quality of such evidence is substantial. After reviewing the limited Pennsylvania authority available, we hold that substantial circumstantial evidence may be sufficient to prove publication in the context of defamation.

5. 454 Pa.Super. 548, 686 A.2d 18 (1996) (quoting *Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456, 466 (1984)).

6. In Pennsylvania, the plaintiff's burden of proof in a defamation action is set forth by statute:
   (a) **Burden of plaintiff.**—In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:
   (1) The defamatory character of the communication.

   (2) **Its publication by the defendant.**
   (3) Its application to the plaintiff.
   (4) The understanding by the recipient of its defamatory meaning.
   (5) The understanding by the recipient of it as intended to be applied to the plaintiff.
   (6) Special harm resulting to the plaintiff from its publication.
   (7) Abuse of a conditionally privileged occasion.
   42 Pa.C.S.A. § 8343 (emphasis added).

¶ 8 In *Agriss v. Roadway Express, Inc.,*[7] this Court was presented with a somewhat similar situation in which an appellant had attempted to establish the publication of defamatory statements via circumstantial evidence. In that case, it was undisputed that defamatory material had been widely circulated. However, circumstantial evidence was required in order to prove the identity of the author of the materials. Interestingly, this Court engaged in an analysis as to whether circumstantial evidence alone could be used to establish publication in that context. After a thorough discussion, our Court held that circumstantial evidence can, indeed, be sufficient to prove publication by a defendant, by analogy to other Pennsylvania decisions permitting the fact-finder to infer liability despite the absence of direct proof linking the party held liable to wrongful or negligent acts. *See Sperrazza v. Cambridge Mutual Fire Insurance Co.,* [313 Pa.Super. 60,] 459 A.2d 409 (Pa.Super.1983) (no direct evidence linking insurance claimants to arson); *Speicher v. Reda,* [290 Pa.Super. 168,] 434 A.2d 183 (Pa.Super.1981) (action under Pennsylvania dram shop act; evidence sufficient to prove driver was served alcohol while "visibly intoxicated," even though no direct evidence of driver's condition while in tavern); *Bethay v. Philadelphia Housing Authority,* [271 Pa.Super. 366,] 413 A.2d 710 (Pa.Super.1979) (no witness to boy's fall to death down elevator shaft; evidence of landlord's negligence sufficient); *Canery v. Southeastern Pennsylvania Transportation Authority,* [267 Pa.Super. 382,] 406 A.2d 1093 (Pa.Super.1979) (no witness to subway accident).

*Agriss, supra* at 466.

¶ 9 Although instantly Appellant has only circumstantial, as opposed to direct

evidence which he can proffer to prove the actual dissemination of defamatory material, we nevertheless conclude that the quantity and quality of the circumstantial evidence presented in this case is sufficient to survive a motion for summary judgment. Given the timing of the complete cessation of Porter's referrals in what had been a successful home inspection business in relation to Overdorff's comments to both Porter and Ms. Dailey, a rational fact-finder, viewing the evidence in the light most favorable to the non-moving party, could certainly determine that sufficient evidence had been presented to establish Overdorff's publication to the other realtors of defamatory statements regarding Porter.

¶ 10 In addition, we are aided by reference to another jurisdiction, where we found the case of *Forster, VMD v. West Dakota Veterinary Clinic, Inc.,* 689 N.W.2d 366, 2004 ND 207 (2004), to be persuasive. In that case, the defendant similarly claimed that the plaintiff could not prove publication of defamatory material where she failed to produce any witnesses who had actually heard the defamatory statements being made. The defendant, a veterinarian and the plaintiff's employer, admittedly made defamatory statements about the plaintiff to various individuals, but denied that any comments she had made were the reason that the plaintiff could not obtain employment from other veterinarians. *Id.* at 377. However, the *Forster* Court determined that the circumstantial evidence presented was sufficient to establish publication to the various potential employers at issue. And, that court also emphasized that the jury certainly was not required to conclude that the *only* reason that the plaintiff was unable to obtain

---

7. 334 Pa.Super. 295, 483 A.2d 456 (1984).

employment was as a result of the defendant's alleged defamatory statements. *Id.* *See also First v. Zem Zem Temple,* *supra.*

¶ 11 Similarly, in this case, Overdorff made negative and possibly defamatory statements to at least one individual, Ms. Dailey, immediately after the Dailey inspection.[8] Further, Overdorff's fax to Porter provides strong direct evidence of her state of mind toward Porter after the Dailey inspection. Common sense dictates recognizing that Overdorff's comments, combined with the sudden and complete cessation of referrals suffered by Porter, present a question of material fact for a jury's consideration.

¶ 12 Accordingly, for the foregoing reasons, we reverse the trial court's order granting Appellees' motion for summary judgment and remand for further proceedings consistent with this opinion.

¶ 13 Order reversed and remanded. Jurisdiction relinquished.

---

**8.** We do not reach Appellees' contention regarding the lack of damages flowing solely from comments made to Ms. Dailey in light of our disposition which permits Porter's allegations regarding publication to other realtors to survive summary judgment.