**Richard H. MOORE, Appellant**

v.

**Carol COBB–NETTLETON and Carol Cobb–Nettleton, D.S.W., Appellees**

Superior Court of Pennsylvania.

Argued Sept. 28, 2005.

Filed Dec. 21, 2005.

Adam J. Sager, Pottstown, for appellant.

John B. Day, Philadelphia, for appellees.

Before: JOYCE, LALLY–GREEN, and JOHNSON, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Richard H. Moore, appeals from the order granting summary judgment in favor of Appellees, Carol Cobb–Nettleton (Appellee) and Carol Cobb–Nettleton, D.S.W. and Associates. We affirm.

¶ 2 The trial court stated the factual and procedural history as follows:

This is a defamation action.

Plaintiff, Richard H. Moore, is the natural father of M.M., a mentally retarded woman who was born on April 17, 1967.

Defendant, Carol Cobb–Nettleton, is a clinical social worker holding a doctorate in social work from the University of Pennsylvania. She is an adjunct associate professor at Widener University, where she is also the clinical coordinator for a program in human sexuality.

Beginning July 1, 1994, M.M. lived in a foster care type arrangement with Wilma Blevins, R.N. and Ms. Blevins' family in a program called "Lifesharing." Said program is managed by

Ken–Crest Family Living ("Ken–Crest"), a non-profit service agency which contracts with the County of Montgomery and other local governments to provide a wide range of services to individuals with mental disabilities, including mental retardation.

At the request of Ken–Crest, defendant first saw M.M. on April 3, 2002 because M. was exhibiting outbursts of aggressive behavior. Defendant contends that, at that time, there was no suggestion that M.M. was sexually active. Defendant recommended, among other things, that M. see her primary care physician for medication to control her anxiety and that all caffeine be discontinued. When defendant saw M. a second time on May 6, 2002, M.'s emotional control had greatly increased.

At the request of Ken–Crest Family Services, defendant saw M. again on March 10, 2003. Stephanie Brown, the coordinator of Ken–Crest's family living program, told defendant that M.M.'s primary care physician was Carol Henwood, M.D., and that Dr. Henwood had told Stephanie Brown that she (Dr. Henwood) was concerned whether inappropriate sexual touching and related conduct was occurring during M.M.'s visits to the home of her parents. Additionally, Stephanie Brown told defendant that Wilma Blevins joined in the concern that inappropriate touching was going on. Defendant contends that the "primary motivation" for the March 10, 2003 consultation was a request from Dr. Henwood to Ken–Crest to have somebody meet with M. about the possibility of her being sexually active.

Ken–Crest asked defendants to perform a psychosexual evaluation of M.M. and develop an educational/treatment plan. The specific purpose of the evaluation was to assess the likelihood of sexual abuse by plaintiff. Meanwhile, Ken–Crest undertook an investigation based on M.M.'s acknowledgement and/or statements that she was sexually active.

As part of its investigation, Ken–Crest asked defendant to issue an interim report. In a confidential memorandum dated April 4, 2003 addressed to Carrol Reckard, Director of Ken–Crest Family Living, defendant wrote the following:

Upon the suggestion of Ms. M.'s physician, Stephanie Brown requested I do a psychosexual evaluation of M.M. and to develop an educational/treatment plan. I have seen Ms. M. four times since January 1, 2003, have had a phone conversation with Dr. Carol Henwood, M.D., met with Wilma Blevins, the Family Living provider, and met with Stephanie Brown. I already knew Ms. M. from a year ago when I evaluated her acute anxiety disorder resulting in aggressive behaviors and suggested medications to which she has responded nicely. M.M. is a 37 year old single woman with severe to moderate mental retardation having limited verbal skills. She has never been adjudicated incompetent. She has lived with Wilma Blevins' family since 7/1/94 and visits regularly with her parents on weekends and for mini vacations.

M. reports that she is sexually active, that she likes kissing orally, and she likes being kissed on her lips and breasts. She reports that she likes kissing the penis and when the penis is put in her "peepee" and moved around, it feels good.

M. indicates someone named "Dad" as her sexual partner. When showing me a picture of her family, she identified Mr. Moore as Dad and as the one who kisses her on the lips, breasts and moves in her "peepee." She describes these behaviors happening when Dad

bathes her and takes her for walks at home. She reports, although her mother is around the home, that mother does not do these behaviors with M.

It is my clinical judgment that:

a. M.M. is sexually active and she is not practicing safe sex. She did not give evidence that she recognized a condom.

b. She is a very concrete thinker and she has very limited ability to be able to fantasize.

c. She loves her father very much.

d. She currently is showing no evidence of physical or psychological distress by these physical behaviors.

e. She is not showing any signs of guilt at this time. She reports that her "Dad" likes doing these behaviors, and she likes doing them. She consistently reports that the behaviors do not hurt. She gives no evidence that she understands these behaviors to be bad. She gives no evidence that she understands that she has the choice of saying no to participate in these behaviors.

f. Her value development is only at a stage one on a Kohlberg Scale of value development. Namely, what is right is pleasing; what is wrong is pain, including doing what upsets another. M. has a strong need to please others.

g. Although never adjudicated as incompetent, it is doubtful she would be found competent for a judicial process.

h. M. can identify parts of the body on pictures and on herself when named, although she is inconsistent in supplying the names when parts of the body are pointed to. She uses the term "peepee" as a general term including urethra, va-

gina, and anal openings. She is consistent in being able to name "penis," "breasts," and "lips."

i. M.M. cannot differentiate time units nor do numerical sequencing meaningfully; therefore, she is not able to report the number of times, timing, nor sequencing of the behaviors.

j. M. is very positively bonded to the Wilma and Roger Blevins family and especially their adult daughter, Kelly.

It is my clinical judgment that these behaviors are confusing with significant, negative consequences to M.'s sexual/relational development and, therefore, they should stop. However, I believe it would also be a very negative consequence if M. would no longer have contact with her father due to a court order or the father choosing to have no further contact with her. It would also be very detrimental to M., in both the short and long term, to lose her family living provider.

Therefore, I recommend:

a. All sexualized touching between M. and "Dad" stop;

b. All visits will be supervised until there is sufficient clinical evidence that there is physical and psychological safety for M.;

c. Both parents enter into voluntary clinical treatment with someone trained specifically regarding sexual offending;

d. M. and her family living provider have clinical treatment to deal with the changes in the relationships;

e. Baseline cultures and blood test for possible STD's will be done. Since M. has significant psychological distress regarding medical ex-

ams, the recommendation for baseline assessment for STD testing (including hepatitis and HIV screening) will be modified if "Dad" will voluntarily have STD screening in a timely fashion and provide appropriate documentation. .

f. Strong consideration will be given to referring the matter to appropriate authorities.

I am prepared to meet Mr. and Mrs. Moore with you to discuss the above findings and recommendations.

On April 30, 2003, Carrol Reckard and defendant met with plaintiff and his wife in the privacy of plaintiff's home to discuss the contents of defendant's April 4, 2003 report. At the meeting, defendant told plaintiff that it was her professional opinion that there was substantial credible evidence to support the proposition that there had been inappropriate physical contact between him and his retarded daughter. Carrol Reckard told plaintiff that there would be an investigation by the Pennsylvania Office of Mental Retardation and also by Ken–Crest.

Following the meeting, Ken–Crest filed a state-mandated incident report with the Pennsylvania Office of Mental Retardation, which instituted an investigation. Thereafter, Ken–Crest or the Office of Mental Retardation determined that plaintiff's visits with M. should be supervised.

On September 16, 2003, plaintiff filed a defamation action against defendants. Three days later, plaintiff filed an amended complaint, alleging that, as a result of the report that was issued by the defendants to Ken–Crest, actions were taken to limit plaintiff's contact with M. and an accusation was made by defendants that plaintiff had inappropriate sexual contact with M. Plaintiff contended that defendants defamed him by failing to perform a proper and thorough evaluation of M. and by disclosing untruths about plaintiff to a third party.

On September 30, 2004, defendant Carol Cobb–Nettleton filed a motion for summary judgment.

On February 23, 2005, the undersigned entered an Order granting defendant Carol Cobb–Nettleton's motion for summary judgment and entering summary judgment against plaintiff and in favor of said defendant.

On February 28, 2005, the undersigned entered an amended Order to clarify that summary judgment was being entered in favor of both defendant Carol Cobb–Nettleton, D.S.W. *and* Carol Cobb–Nettleton, D.S.W. & Associates, P.C., on the grounds that defendants were entitled to a conditional privilege to publish the allegedly defamatory material.

On March 3, 2005, plaintiff filed notice of appeal to the Superior Court of Pennsylvania from our Order dated February 28, 2005.

On March 20, 2005, plaintiff filed a concise statement of matters complained of on appeal...

Trial Court Opinion, 4/25/05, at 1–6.

¶ 3 Appellant raises one issue on appeal: Did the trial court usurped [sic] improperly the role of the jury by granting Appellees' motion for summary judgment when appellant alleged facts sufficient to establish a prima facie case?

Appellant's Brief at 4. Appellant challenges the grant of summary judgment by the trial court by contending that he did establish a *prima facie* case to support a claim of defamation.

¶ 4 This Court summarized the principles of summary judgment, and our standard of review, as follows:

Pennsylvania law provides that summary judgment may be granted only in

those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.

*Gutteridge v. A.P. Green Services*, 804 A.2d 643, 651 (Pa.Super.2002) (citations omitted), *appeal denied,* 574 Pa. 748, 829 A.2d 1158 (Pa.2003). Where our inquiry involves only questions of law, our review is *de novo. Toy v. Metro. Life Ins. Co.,* 863 A.2d 1, 6 (Pa.Super.2004).

¶ 5 Appellant claims that the trial court erred in granting summary judgment on the basis that Appellant failed to establish a *prima facie* case to support a claim of defamation. Here, the trial court concluded that Appellees were entitled to protection under a conditional privilege concerning the communication of possible improper sexual behavior to Ken–Crest. Appellant claims that a question exists as to whether Appellees' publishing of the confidential report is conditionally privileged and, if so, whether an abuse of the privilege occurred.

¶ 6 "Defamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her." *Elia v. Erie Insurance Exchange,* 430 Pa.Super. 384, 634 A.2d 657, 660 (1993). Only statements of fact, not expressions of opinion, can support an action in defamation. *Id.* In a defamation case, a plaintiff must prove: "(1) The defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Porter v. Joy Realty, Inc.,* 872 A.2d 846, 849 n. 6 (Pa.Super.2005), *quoting,* 42 Pa.C.S.A. § 8343(a). *See also, Weber v. Lancaster Newspapers, Inc.,* 878 A.2d 63 (Pa.Super.2005). Where the issue is properly raised, a defendant has the burden of proving: "(1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; [and/or] (3) the character of the subject matter of defamatory comment as of public concern." 42 Pa.C.S.A. § 8343(b). In this case, then, Appellees must demonstrate the privileged character of the re-

port and Appellant must demonstrate abuse of the privilege. We first address whether the report was subject to a privilege.

 ¶ 7 Again, the publisher of defamatory matter is not liable if the publication was made subject to a privilege, and the privilege was not abused. *Elia,* 634 A.2d at 660; Restatement of the Law (Second), Torts, § 593 (Elements of Conditional Privilege Arising from Occasion). A conditional privilege arises when a recognized interest of the public is involved. *American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania,* 872 A.2d 1202, 1210 (Pa.Super.2005). Communications which are made on a proper occasion, from a proper motive, in a proper manner, and which are based upon reasonable cause are privileged. *Miketic v. Baron,* 450 Pa.Super. 91, 675 A.2d 324, 329 (1996). *See also,* Restatement of the Law (Second), Torts, § 595 (Protection of Interest of Recipient or a Third Person).

 ¶ 8 The trial court addressed the privileged publication issue as follows:

In the instant matter, numerous facts led the Court to find that the publication in question was made on a conditionally privileged occasion.

The defendants were clearly qualified to conduct an evaluation of M.M. In the affidavit in support of her motion for summary judgment, defendant stated that the majority of her professional practice since 1986 falls under the term "human sexuality" and "a not insignificant part of it concerns individuals having significant mental disabilities such as mental retardation." Defendant stated further that, since 1987 when she opened her practice, she has each year been requested by Ken–Crest to provide services to individuals with mental retardation who are in turn recipients of Ken–Crest services. Defendant estimated that, in the last ten years, she had provided services at Ken–Crest's request to numerous individuals who suffer from mental disabilities. Defendant might see these individuals "only once or as often as weekly over an extended period of time."

Defendant stated that she saw M.M. on March 10, 2003 at the request of Ken–Crest Family Services. Stephanie [Brown] of Ken–Crest said she, M.M.'s primary care physician, and Wilma Blevins were all concerned whether inappropriate sexual touching and related conduct was occurring during M.M.'s visits to the home of her parents.

In her affidavit, defendant stated that she authored at Ken–Crest's request the report which is the subject of the instant claim against her. Defendant's affidavit also contains the following statements:

24. It was and still is my intention that the contents of my report of April 4, 2003 would be published or otherwise disclosed to only three groups of people: (1) Carrol Reckard who is the Director of Life Sharing program at Ken–Crest and those employees at Ken–Crest such as Stephanie Brown who have substantial responsibilities for the welfare of M.M.; (2) such law enforcement personnel as the executives at Ken–Crest, deemed it appropriate to disclose my report, including the PA State Office of Mental Retardation; and (3) Richard Moore and his wife.

25. To the best of my knowledge, the contents of my April 4, 2003 report were limited to these groups *before* Richard Moore consulted an attorney to file a claim against me.

26. On April 30, 2003, Carrol Reckard and I met with Richard Moore and his wife at their kitchen table to discuss the contents of my report of April 4, 2003. Mr. and Mrs. Moore

had several days notice of this meeting and agreed to it in the intimacy of their home.

27. At the meeting of April 30, 2003, I told Richard Moore in very direct language that it was my professional opinion that there was substantial credible evidence to support the proposition that there had been inappropriate physical contact between him and his retarded daughter. Carrol Reckard told Mr. Moore that there would be an investigation by the Office of Mental Retardation and also by Ken–Crest.

(Affidavit of Carol Cobb–Nettleton, D.S.W. in support of her motion for summary judgment.)

The statements in defendant's affidavit clearly establish the existence of a conditional privilege. There is no question that defendant was an appropriate person to investigate the allegations of improper conduct by plaintiff. Furthermore, it is clear that defendant intended for her report to be disclosed only to appropriate individuals and/or authorities.

Trial Court Opinion, 4/25/05, at 7–9. The trial court, thus, determined that Appellee is entitled to a conditional privilege as to the publication. We agree.

¶ 9 Here, as found by the trial court, Appellee, who had practiced in the field of human sexuality since 1986, was qualified to evaluate M.M. Our review of the record reflects that Appellee authored the April 4, 2003 report as a result of Ken–Crest's request. Our review also reflects that Appellee intended that the contents of the report would only be disclosed to: 1) necessary Ken–Crest employees; 2) necessary law enforcement personnel as determined by Ken–Crest; and 3) Appellant and his wife. Finally, review of the report reflects that the report was limited to the allegations of improper conduct by Appel-

lant. In conclusion, the record reflects that facts existed (improper sexual contact) which warranted sharing of the allegation of improper sexual contact with another (Ken–Crest and authorities) because of another's entitlement to know the information. Because the report was made on a proper occasion, from a proper motive, in a proper manner, and was based upon reasonable cause, the report was privileged. *Miketic.*

¶ 10 Having concluded that the publication was privileged, we now turn to the question of whether Appellee abused the privilege. Appellant asserts that material issues of fact exist as to whether there is an abuse of the conditional privilege. Appellant's Brief at 16. Appellant specifically contends that a jury question is presented as to whether the conditional privilege was lost because Appellee failed to conform to the standards applicable to her profession in arriving at her opinion that sexual misconduct occurred between Appellant and his retarded daughter. Said another way, Appellant asserts that the professional negligence of Appellee results in the conditional privilege being lost.

¶ 11 Again, Appellant must prove abuse of the conditional privilege. *Porter v. Joy Realty, Inc.* Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. *Miketic v. Baron,* 675 A.2d at 329. Finally, cases which have held that a conditional privilege can be lost by negligence are restricted to matters which are "not of a public concern." *See, American Future Systems, Inc.; Banas v. Matthews Inter-*

**1270** 

*national Corp.,* 348 Pa.Super. 464, 502 A.2d 637 (1985); *Rutt v. Bethlehems' Globe Publishing Co.,* 335 Pa.Super. 163, 484 A.2d 72 (1984). We address this latter principle first.

 ¶ 12 Here, Pennsylvania law required Appellee to report her professional opinion to law enforcement authorities. Reporting of her professional opinion was, thus, a matter of public concern. For this reason, Appellant's assertion that the conditional privilege can be lost by negligence fails. *American Future Systems, Inc.; Banas; Rutt.*

 ¶ 13 We next consider whether Appellant proved abuse of the conditional privilege by demonstrating that the publication was actuated by malice or negligence, was made for a purpose other than that for which the privilege was given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. *Miketic.*

¶ 14 The trial court addressed the abuse of privilege issue as follows:

> Even assuming appellant's facts are true, it is clear that he cannot sustain a claim for defamation. The record is devoid of any evidence that defendant's report was actuated by malice or negligence, was made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be neces-

sary for the accomplishment of the purpose.

Trial Court Opinion, 4/25/05, at 9.

¶ 15 Our review of the record reflects that Appellee authored the April 4, 2003 report as a result of Ken–Crest's request. Our review also reflects that Appellee intended that the contents of the report would only be disclosed to: 1) necessary Ken–Crest employees; 2) necessary law enforcement personnel as determined by Ken–Crest; and 3) Appellant and his wife. Finally, review of the report reflects that the report was limited to the allegations of improper conduct by Appellant. In summary, the record fails to establish that Appellant proved that the publication was actuated by malice (or negligence), was made for a purpose other than that for which the privilege was given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or included defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose. In conclusion, Appellant failed to prove abuse of the conditional privilege. *Porter v. Joy Realty, Inc.* We agree with the trial court and Appellant's final claim fails.

¶ 16 Accordingly, on the basis of the foregoing, we affirm the order granting summary judgment in favor of Appellees.[1]

¶ 17 Order affirmed.

---

**1.** Having granted relief to Appellees on the basis of conditional privilege, we decline their invitation to create a judicial immunity from liability similar to 23 Pa.C.S.A. § 6318, the immunity provision of the Child Protective Services Law.