J-S16003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BLUE RIBBON PACKAGING CORP D/B/A/ WEST READING STRAPPING AND KEVIN, STEPHEN AND DAVID LENEGHAN | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : | |
| v. | : : : | No. 1000 MDA 2024 |
| KEVIN HUGHES, NARROW HOLDINGS, LLC, GEORGEADIS SETLEY RAUCH & PLANK, LLC AND KELSEY E. FRANKOWSKI | : : : : | |

Appeal from the Order Entered June 14, 2024
In the Court of Common Pleas of Berks County Civil Division at No(s):
17-16460

| | | |
|---|---|---|
| NARROW HOLDINGS, LLC, KEVIN HUGHES, NICOLE PLANK, KELSEY E. FRANKOWSKI, AND GEORGEADIS/SETLEY | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| | : | No. 1001 MDA 2024 |
| BLUE RIBBON PACKAGING CORP D/B/A WEST READING STRAPPING, KEVIN LENEGHAN, STEPHEN LENEGHAN AND DAVID LENEGHAN | : : : : : | |
| Appellants | : | |

Appeal from the Order Entered May 14, 2024
In the Court of Common Pleas of Berks County Civil Division at No(s):
21 12680

BEFORE:  LAZARUS, P.J., BOWES, J., and LANE, J.

MEMORANDUM BY LAZARUS, P.J.:            **FILED: SEPTEMBER 25, 2025**

Blue Ribbon Packaging Corp., d/b/a West Reading Strapping ("Blue Ribbon"), Kevin Leneghan, Stephen Leneghan, and David Leneghan ("the Leneghans") (collectively, "Blue Ribbon Group" or "BRG") appeal from the order, entered in the Court of Common Pleas of Bucks County, granting Appellees' motion for summary judgment, in part, and (1) dismissing all counts against Nicole Plank, Kelsey Frankowski, and Georgeadis Setley Rauch & Plank, LLC ("Law Firm") (collectively, "Plank Group") and (2) dismissing Count V (civil conspiracy) as to all Appellees. The court denied summary judgment as to Appellees Kevin Hughes and Narrow Holdings, LLC, on Counts I, II, II, IV, VII, and IX.[1] After our review, we affirm, in part, reverse, in part, and remand for proceedings consistent with the dictates of this memorandum.

The trial court set forth the facts of this matter as follows:

[BRG] originally filed suit in this matter by complaint on August 23, 2017, alleging that [Appellees] engaged in wrongful and unlawful actions stemming from, essentially, a dispute between a landlord and a purported tenant. [The Leneghans] are all shareholders, officers, and directors, at all relevant times, of Blue Ribbon. Narrow Holdings, of which Hughes is the owner and operator, owned the property located at 701 Reading Avenue, West Reading, Berks County, Pennsylvania ("the Property"). [Attorneys] Plank and Frankowski were, at all relevant times

_____

[1] Although the court's order does not dispose of all claims and all parties as required for a final appealable order, **see** Pa.R.A.P. 341(b), on June 14, 2024, the trial court entered an "Order Granting Determination of Finality" certifying the May 14, 2024 order as a final appealable order. **See** Pa.R.A.P. 341(c) (allowing appellate review as final order where express determination is made immediate appeal would facilitate resolution of entire case).

herein, employed by [the Law Firm] and were[,] and continue as[,] counsel[1] for Narrow Holdings and Hughes.

> [1] During the pendency of this matter, [Attorneys] Plank and Frankowski launched a new firm as Plank Frankowski, which also now represents Hughes and Narrow Holdings.

In 2014, Narrow Holdings purchased the Property from the previous owner, Reading REO, LLC. Following the purchase, Narrow Holdings and West Reading Fabric Company ("WRF") entered into a lease agreement ("the Lease") by which WRF leased approximately 25,000 square feet of space of Unit 1 at the Property ("the Leased Space"). In or about 2015, Industrial Grade Products, LLC[,] d/b/a West Reading Strapping and Silicone Company ("IGP")[,] entered into an asset purchase agreement with WRF whereby IGP obtained the assets of WRF.

In March of 2017, IGP and Blue Ribbon entered into an asset purchase agreement ("APA")[,] pursuant to which[] Blue Ribbon purchased a substantial amount of assets from IGP. Thereafter, Blue Ribbon began to occupy and operate in the Leased Space. The events that followed are in some dispute, but it is agreed that[,] on Saturday, August 19, 2017, the Leneghans arrived at the Property, where a padlock had been placed on the door[.] The Leneghans detached the padlock[2] and entered the Property, thereafter, removing certain items and transferring them to a waiting truck.

> [2] The procedure of removal of the padlock is in dispute[,] as the Leneghans claim that they gained access using keys to the Property, while Narrow Holdings claims that the Leneghans obtained access through the use of bolt cutters. The method of access is not material to this motion.

Hughes was alerted to the Leneghans' presence and actions at the Property and traveled to the Property, where he notified law enforcement and his counsel, [Attorney] Frankowski, who later arrived at the Property as well. Officer Nicholas Karetas ("Officer Karetas") of the West Reading Borough Police Department also arrived at the Property and began to converse with the various parties and with the District Attorney's Office to advise him on what action he should take. Being advised by the District Attorney's Office that the matter was civil in nature, Officer Karetas directed the Leneghans, and any employees of Blue Ribbon, to leave the Property and pursue relief in civil court, and that if they did not leave, Officer Karetas would arrest them for

trespass. According to Officer Karetas, the Leneghans refused to leave[] and[,] thus, were thereafter arrested and charged with criminal trespass, which charges were dismissed shortly thereafter.

After several years of litigation, [BRG] filed their revised second amended complaint ("Second Amended Complaint") on April 23, 2020. In the Second Amended Complaint, [BRG] alleged causes of action in malicious prosecution, tortious interference with [] business and economic relations, wrongful eviction, civil conspiracy, and abuse of process against all defendants; defamation/slander against Hughes[ and Attorneys] Plank[] and Frankowski; and respondeat superior/vicarious liability against the Law Firm and Narrow Holdings based on the actions of [Attorneys] Plank and Frankowski and Hughes, respectively. Defendants filed preliminary objections, and upon arguments heard before the court, the abuse of process count was dismissed, and the claim against [Attorney] Plank for defamation was dismissed.

The matter sat dormant for almost two years until defendants filed an answer with new matter, as well as a counterclaim[,] on May 16, 2023. In the meantime, defendants filed a separate action at Berks County Civil Docket number 21-12680, alleging a claim of unjust enrichment against all defendants, and a claim of breach of contract by Narrow Holdings against all defendants. A motion to consolidate the two matters was granted by [the] court on February 27, 2024, [and] the two matters were consolidated. Defendants['] counterclaim was withdrawn.

Defendants filed an amended motion for summary judgment [at docket number] 17-16460 on March 14, 2024. In the motion, defendants sought summary judgment in their favor as to all claims against all defendants. [BRG] filed their response in opposition and argument was [held on April 26, 2024]. The parties have submitted briefs in support of their respective positions and this matter is, therefore, ripe for disposition.

Trial Court Opinion, 5/14/24, at 2-4 (unnecessary capitalization and some footnotes omitted).

On May 14, 2024, the trial court entered an order granting partial summary judgment, as described above. Thereafter, BRG sought a

determination of finality pursuant to Pa.R.A.P. 341(c), which the trial court granted on June 14, 2024. BRG filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. BRG raises the following claims for our review:

> 1. Whether the trial court erred in granting [Appellees'] motion for summary judgment dismissing all counts as to [Attorneys] Nicole Plank[ and] Kelsey Frankowski, and [the Law Firm]?
>
> 2. Whether the trial court erred in granting [Appellees'] motion for summary judgment as to Count V, civil conspiracy?

Brief of Appellants, at 4 (unnecessary capitalization omitted).

BRG challenges the trial court's partial grant of summary judgment. We review such a challenge with the following principles in mind:

> "[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Atcovitz v. Gulph Mills Tennis Club, Inc.***, [] 812 A.2d 1218, 1221 ([Pa.] 2002); Pa.R.C.P. [] 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. ***Toy v. Metropolitan Life Ins. Co.***, [] 928 A.2d 186, 195 ([Pa.] 2007). In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment "where the right to such judgment is clear and free from all doubt." ***Id.*** On appellate review, then,
>
> > an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question[,] our standard of review is de novo. This means we need not defer to the determinations made by the lower tribunals.

- 5 -

> ***Weaver v. Lancaster Newspapers, Inc.***, [] 926 A.2d 899, 902–
> 03 ([Pa.] 2007) (internal citations omitted).  To the extent that
> this Court must resolve a question of law, we shall review the
> grant of summary judgment in the context of the entire record.
> ***Id.*** at 903.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010).

BRG argues that the trial court erred in granting Appellees' motion for summary judgment and dismissing all counts as to Attorneys Plank and Frankowski and the Law Firm.  BRG asserts that the trial court "misapplied the law as to the elements of malicious prosecution, tortious interference with contractual and economic relations, wrongful eviction, defamation, civil conspiracy, and respondeat superior/vicarious liability as to the Plank Group[,] . . . failed to construe the facts in favor of the non-moving party, and relied on arguments that were never presented by the moving party in its motion." Brief of Appellants, at 10-11.

In order to establish a claim for malicious prosecution, a party must show that the defendants instituted proceedings against the plaintiff:  (1) without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff.  ***Bradley v. Gen. Acc. Ins. Co.***, 778 A.2d 707, 710 (Pa. Super. 2001).

> The law in Pennsylvania on malicious prosecution has developed
> to a large extent based upon the Restatement (Second) of Torts.
> We refer to [s]ection 653, comment g, of the Restatement
> (Second) of Torts as a guide to determining when a private
> individual can be responsible for initiating a criminal proceeding
> by providing statements to the police or law enforcement
> authorities:
>
>> A private person who gives to a public official information of
>> another's supposed criminal misconduct, of which the

official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request[,] or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

RESTATEMENT (SECOND) OF TORTS § 653, comment g.

*Id.* at 710-11 (internal citation omitted).

BRG argues that the Plank Group knew that the Leneghans were running their business out of the Property and that Attorneys Plank and Frankowski both "made false statements and put pressure on the officer" to press charges. BRG asserts that Attorney Frankowski "personally yelled that the Leneghans were 'trespassers' and 'thieves' in front of police" and "did not simply state her client's position on the matter, but actually made those allegations

herself." Brief of Appellants, at 12, citing Affidavit of James M. Gasper, 3/28/24; West Reading Police Incident Report, 8/19/17. BRG claims that, because the Plank Group knew their statements to be false, they could not have been made for the purpose of bringing an offender to justice. *Id.* at 13.

The trial court addressed this issue as follows:

> [T]his [c]ourt is wholly unconvinced as to [BRG's] prima facie case against [Attorneys] Frankowski and Plank. Neither Frankowski [n]or Plank was mentioned as providing information to Officer Karetas during the initial call to law enforcement, or while Officer Karetas was at the Property. There is mention in Officer Karetas' report that a person identified as "an associate from [the Law Firm]" entered the Property with Hughes to attempt to resolve the incident without issue, which the [c]ourt, through facts alleged in the pleadings, understands was [Attorney] Frankowski. However, there is no indication that [Attorney] Frankowski provided any information to Officer Karetas. Moreover, Officer Karetas' report specifies that [Attorney] Plank spoke to him after the arrest of the Leneghans had occurred and without any information pertinent to prosecution, other than that she had expected information from David Leneghan to demonstrate his claims. Therefore, based on the record, and viewing the evidence in the light most favorable to [BRG] as the non-moving party, [the court finds] that [BRG] have failed to sustain their burden [to] establish[] the elements of a prima facie case of malicious prosecution against [the Plank Group.]

Trial Court Opinion, 5/14/24, at 10-11.

Upon our review of the record, we can discern no error of law on the part of the trial court. BRG proffered no evidence that could support a claim that: (1) Attorneys Plank or Frankowski expressed by direction, request, or pressure of any kind a desire to have proceedings initiated against the Leneghans; (2) any such pressure was the determining factor in Officer Karetas' decision to arrest the Leneghans; or (3) Attorneys Plank or

Frankowski knowingly furnished false information to Officer Karetas. **See Bradley**, **supra**. Accordingly, the trial court properly entered summary judgment as to BRG's malicious prosecution claim.

Next, BRG challenges the trial court's dismissal of its claim for tortious interference with contractual and economic relations. "[A] party is liable for pecuniary loss due to tortious interference with a contractual relationship when the party 'intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract[.]'" **Empire Trucking Co., Inc. v. Reading Anthracite Coal Co.**, 71 A.3d 923, 932 (Pa. Super. 2013), quoting **Walnut St. Assoc., Inc. v. Brokerage Concepts, Inc.**, 982 A.2d 94, 98 (Pa. Super. 2009). The elements of a claim of tortious interference with a contractual relationship are as follows:

> (1) [T]he existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

**Empire Trucking Co., Inc.**, 71 A.3d at 933 (citation omitted).

> The second element requires proof that the defendant acted "for the specific purpose of causing harm to the plaintiff." **Glenn**[ **v. Point Park College**], [] 272 A.2d [895,] 899 [(Pa. 1971)] (the tort of interference with contract "is an intentional one: the actor is acting as he does [f]or the purpose of causing harm to the plaintiff"). The third element requires proof that the defendant's actions were improper under the circumstances presented, which

is determined in accordance with the factors listed in Restatement section 767:

> In determining whether an actor's conduct in intentionally interfering with a contract . . . is improper or not, consideration is given to the following factors:  (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

> Restatement (Second) of Torts § 767 (1979)[.]  The second and third elements of the tort of intentional interference with contractual relations are closely related, as our Supreme Court has acknowledged that[,] in most cases[,] the defendant's intentional conduct is done "at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff[.]"  *Glenn*, [] 272 A.2d at 899.

*Phillips v. Selig*, 959 A.2d 420, 429–30 (Pa. Super. 2008)

BRG argues that "emails between David Leneghan and [Attorney] Plank detail an existing contractual relationship and the record shows damages caused by the lockout from interference with Blue Ribbon's shipments."  Brief of Appellants, at 14.  BRG asserts that the Plank Group was "aware of the interference with existing and prospective contractual and economic relations" and "knew that Hughes had unlawfully placed a padlock and eviction notice on the door and knew that continuing to obstruct access was harming [BRG's] business[.]"  *Id.* at 15.

Appellees respond that neither Attorney Plank nor Attorney Frankowski had any intent to harm BRG's contractual or economic relations and that BRG has presented no evidence whatsoever of the contracts with which the Plank

- 10 -

Group allegedly interfered or the actual damages they sustained as a result. *See* Brief of Appellees, at 15, 18. Appellees argue that the attorneys were "merely advising their client regarding a civil matter" and there is "no factual basis to support [they] acted outside their representation of their client[.]" *Id.* at 18. The trial court reached a similar conclusion, finding "no indication that any intent to harm existed" and that the attorneys were merely pursuing their clients' interests. Trial Court Opinion, 5/14/24, at 13.

We agree with the trial court and Appellees that BRG adduced no evidence demonstrating that Attorney Plank and Frankowski acted "for the specific purpose of causing harm to" BRG. *Glenn*, 272 A.2d at 899. Rather, the evidence demonstrates that they were simply advising and representing their clients with respect to a dispute over a lease and the contested ownership of certain property. As such, the trial court did not err in granting summary judgment as to BRG's claims against the Plank Group for tortious interference with contractual relations.

BRG next claims that the trial court erred in dismissing its claims against the Plank Group for wrongful eviction.

> "An eviction is an act by a landlord or a third person that interferes with a tenant's possessory right to the demised premises." *See* *Oakford v. Nixon*, 35 A. 588, 589 (Pa. 1896); *see also* 49 Am. Jur.2d Landlord and Tenant § 300 (1970). If that act is wrongful, the tenant may sue for damages in trespass or assumpsit. *See* *Kelly v. Miller*, 94 A. 1055, 1056–57 (Pa. 1915). "[T]here is an implied covenant for the quiet enjoyment of the demised premises, and it is settled in this [s]tate that any wrongful act of the landlord which results in an interference of the tenant's possession, in whole or in part, is an eviction for which the

- 11 -

landlord is liable in damages to the tenant." ***Kuriger v. Cramer***, [] 498 A.2d 1331, 1338 ([Pa. Super.] 1985); ***see also Minnich v. Kauffman***, [] 108 A. 597, 598 ([Pa.] 1919); ***Schienle v. Eckels***, 76 A. 15, 16 (Pa. 1910).

***Fraport Pittsburgh, Inc. v. Allegheny Cnty. Airport Auth.***, 296 A.3d 9, 18 n.10 (Pa. Super. 2023).

> To evict a tenant, landlords must comply with the procedure established in the Landlord Tenant Act. A complaint for possession must be filed in a municipal court or with the magistrate court, and "[i]f it appears that the complaint has been sufficiently proven, the [judge] shall enter judgment against the tenant that the real property be delivered up to the landlord." 68 P.S. § 250.503(a)(1). Five days after judgment is entered, the landlord may request, and the judge shall issue, a writ of possession for the premises. ***See*** 68 P.S. § 250.503(b). "This writ is to be served within no later than forty-eight hours and executed on the eleventh day following service upon the tenant of the leased premises." ***Id.***

***1700 Mkt. St. Associates, L.P. by SRI Eleven 1700 Mkt. Holdings REIT LLC v. Common Grounds 1700 Mkt. St., LLC***, 314 A.3d 855, 862 (Pa. Super. 2024).

In support of their claim that the trial court wrongly dismissed its wrongful eviction claim against the Plank Group, BRG points to the affidavit submitted by David Leneghan, in which he asserted that, on August 17, 2017, he spoke with both Attorney Plank and Attorney Frankowski, who told him, inter alia, that: (1) BRG had been evicted from the Leased Premises through self-help; (2) they were not removing the lock-out; (3) BRG's employees were not allowed in the building; and (4) they knew that BRG had been in the Property "for months" and demanded Leneghan accept an agreement to stay

until the following June at a stated rent. ***See*** Affidavit of David Leneghan, 4/1/24, at ¶ 21.

In response, Appellees argue that nothing in the record supports a claim that Attorney Plank or Attorney Frankowski "were involved in any actions initiating or constituting the wrongful eviction" or "interfered with [BRG's] possessory right to the Leased Premises." Brief of Appellees, at 18-19. Rather, they were "merely acting as legal counsel and advising [their] client with respect to a landlord/tenant matter." ***Id.*** at 19.

In this case, the parties dispute whether BRG had a lawful right to occupy the Leased Premises. Appellees point to the lease entered into between Narrow Holdings, as landlord, and West Reading Strapping and Silicone Company, as tenant, which provided as follows:

> Tenant shall not assign, sublease, transfer[,] or encumber any interest in [the] Lease or allow any third party to use any portion of the Premises (collectively or individually, a "Transfer") without the prior written consent of [the] Landlord, which shall not be unreasonably withheld. Any attempted Transfer in violation of this Article shall, at Landlord's option, be void.

Lease Extension, 1/18/17, at ¶ 8.[2] Accordingly, Appellees assert that BRG was never a valid tenant with a right to occupy the Leased Premises and, therefore, any claim for wrongful eviction must fail. ***See*** Defendants' Brief in

---

[2] The lease attached to Appellees' motion for summary judgment as Exhibit "A" bears an original date of July 1, 2014. The lease was apparently extended for one year on January 18, 2017, as evidenced by the words "1 YEAR LEASE EXTENTION [sic]" written at the top of the document, the crossing out of the year "2014," replaced with the year "2017," in the first paragraph of the lease, and the date "1/18/17" written under the signature of Charles Miller, President of West Reading Strapping and Silicone Company, as tenant.

Support of Motion for Summary Judgment, 3/14/24, at 13-14. BRG, on the other hand, claims that Hughes and Narrow Holdings acquiesced in their occupancy of the Leased Premises and the self-help exercised by Hughes and Narrow Holdings, with the assistance of Attorneys Plank and Frankowski, amounted to wrongful eviction. *See* Answer Opposing Summary Judgment, 4/1/24, at ¶ 50; Brief of Appellants, at 16-17.

In light of the foregoing, and viewed in the light most favorable to BRG as the non-moving party, we find that the evidence adduced by BRG, in the form of David Leneghan's affidavit containing statements made by Plank and Frankowski, was sufficient to create a genuine issue of material fact as to whether Attorneys Plank and Frankowski participated in the wrongful eviction of BRG. If accepted by a jury, BRG's claims that (1) Hughes and Narrow Holdings acquiesced in BRG's occupancy of the Leased Space; (2) Hughes and Narrow Holdings wrongfully engaged in a "self-help" eviction rather than proceeding under the Landlord Tenant Act; and (3) Attorneys Plank and Frankowski, acting on behalf of Hughes and Narrow Holdings, acted to wrongfully deprive BRG of their lawful right to occupy the Leased Space, could merit relief. Accordingly, we reverse the trial court's grant of summary judgment as to the Plank Group on the wrongful eviction claim.

BRG next claims that the trial court erred in granting summary judgment as to the Plank Group on its claim for defamation.

> "Defamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or

dealing with him or her." ***Elia v. Erie Insurance Exchange***, []
634 A.2d 657, 660 ([Pa. Super.] 1993).  Only statements of fact,
not expressions of opinion, can support an action in defamation.
***Id.***  In a defamation case, a plaintiff must prove:  "(1) [t]he
defamatory character of the communication; (2) its publication by
the defendant; (3) its application to the plaintiff; (4) the
understanding by the recipient of its defamatory meaning; (5) the
understanding by the recipient of it as intended to be applied to
the plaintiff; (6) special harm resulting to the plaintiff from its
publication; and (7) abuse of a conditionally privileged occasion."
***Porter v. Joy Realty, Inc.***, 872 A.2d 846, 849 n.6 (Pa. Super.
2005), quoting, 42 Pa.C.S.A. § 8343(a).  ***See also Weber v.
Lancaster Newspapers, Inc.***, 878 A.2d 63 (Pa. Super. 2005).

***Moore v. Cobb-Nettleton***, 889 A.2d 1262, 1267 (Pa. Super. 2005).

A publication in which the speaker imputes to another conduct,
characteristics, or a condition that would adversely affect her in her lawful
business or trade is termed a "slander per se."  ***Walker v. Grand Cent.
Sanitation, Inc.***, 634 A.2d 237, 241 (Pa. Super. 1993).  A plaintiff in a
slander per se case is not required to show "special damages," but "must show
'general damages':  proof that one's reputation was actually affected by the
slander, or that [he] suffered personal humiliation, or both."  ***Id.*** at 246.

In its brief, BRG, quotes the seven defamation factors and, based solely
on the affidavit of James M. Gasper,[3] summarily concludes that "the record
shows all the elements for defamation have been met" and that "there exists
genuine issues of material fact as to whether [Attorneys] Plank and

_____

[3] In his affidavit, Gasper recounts the statements he purportedly heard
Hughes and Frankowski "yelling" at the Leneghans and that he understood
"their defamatory nature."  Affidavit of James M. Gasper, 3/28/24, at ¶¶ 11,
22.

Frankowski knew their statements to police to be false." Brief of Appellants, at 18.

First, we note that there is no evidence of record that Attorney Plank was present at the altercation between Hughes and the Leneghans, much less that she uttered any defamatory statements. Attorney Plank's only involvement on that day was a phone call with Officer Karetas **after** the Leneghans had been arrested.[4] Thus, the trial court properly dismissed the defamation count as to Attorney Plank.

With regard to Attorney Frankowski, who was present during the incident, BRG entirely fails to address whether there is record evidence that the Leneghans' "reputation was actually affected by the slander, or that [they] suffered personal humiliation, or both." **Walker**, 643 A.2d at 246. Thus, even if BRG's evidence could be deemed to create an issue of fact as to

---

[4] Officer Karetas summarized his conversation with Attorney Plank as follows:

> I then received a phone call from HUGHES['] lawyer, Nicole Plank. She[,] too[,] wanted information on the items in the trailers. I explained to her the bill of sale that David [Leneghan] showed us regarding the property. [Attorney] Plank stated that she has been asking David for days to look at a copy of that document. She now agreed with our charge for just the trespass and understood our position on it. She then stated that she was going to call HUGHES and advise him of the same to put the items back in the building. I advised her that if the guys would come back and remove the trailers, that I would not think we could do theft charges because that would fall under the civil aspect of everything. She stated that she understood[,] since that document was shown to us.

West Reading Police Incident Report, 8/19/17, at 6 (capitalization in original).

whether Attorney Frankowski uttered defamatory speech, BRG has failed to address, much less point to any evidence that would create a question of fact, as to whether they suffered "general damages," as required in a case of slander per se. *Id.* Accordingly, BRG is entitled to no relief on this claim.

BRG next challenges the grant of summary judgment in favor of the Law Firm on its cause of action for respondeat superior. Under the doctrine of respondeat superior, recovery is sought on the basis of vicarious liability. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39 (Pa. Super. 2000).

> It is well settled that an employer is held vicariously liable for the negligent acts of his employee [that] cause injuries to a third party, provided that such acts were committed during the course of and within the scope of the employment. *Fitzgerald v. McCutcheon*, [] 410 A.2d 1270, 1271 ([Pa. Super.] 1979). In certain circumstances, liability of the employer may also extend to intentional or criminal acts committed by the employee. *Id.* The conduct of an employee is considered "within the scope of employment" for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. *Id.* [] at 1272 (citing Restatement (Second) of Agency, § 228).

*Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. 1998). Any counts asserting respondeat superior rely upon a finding of negligence of the acting agent. *See, e.g.*, *Keffer v. Bob Nolan's Auto Service, Inc.*, 59 A.3d 621, 638 (Pa. Super. 2012) ("[I]t is clear that if an employee was found to not have been negligent, that his employer could not be held negligent

- 17 -

under the doctrine of respondeat superior.") (citation omitted). *See also* *Mamalis v. Atlas Van Lines, Inc.*, 560 A.2d 1380, 1383 (Pa. 1989) ("A claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor.").

Here, we have concluded that summary judgment was properly entered against Attorneys Plank and Frankowski as to all but one claim—wrongful eviction. As there is record evidence that Plank and Frankowski were acting within the scope of their capacities as member and employee, respectively, of the Law Firm at all times relevant hereto, there remains a genuine issue of material fact as to whether the Law Firm is vicariously liable for the underlying tort of wrongful eviction. Accordingly, we reverse the grant of summary judgment in favor of the Law Firm as to respondeat superior in relation to the claim of wrongful eviction only. *Keffer*, *supra*.

Finally, BRG challenges the court's grant of summary judgment on its claim for civil conspiracy as to all defendants. This Court has defined civil conspiracy as follows:

> To state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. Proof of malice or an intent to injure is essential to the proof of conspiracy.

*Strickland v. University of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. 1997) (citations omitted and formatting altered). This Court has also held that "absent a civil cause of action for a particular act, there can be no cause

of action for civil conspiracy to commit that act." ***Goldstein v. Phillip Morris, Inc.***, 854 A.2d 585, 590 (Pa. Super. 2004) (citation omitted).

Here, BRG points to allegedly "unlawful actions" taken by Hughes and Narrow Holdings, including making false statements to police and attempting a self-help eviction, as well as "several months of communications between all parties in person, via email, and phone" which purportedly "establish evidence that [Hughes and Narrow Holdings], including Plank, knew of [BRG] and its business dealings with Narrow [Holdings] and Hughes." Brief of Appellants, at 21. BRG further argues that the lawsuit filed by Hughes, Plank, and Frankowski against BRG "establish evidence of a common purpose." ***Id.***

As noted above, we have concluded that the trial court properly granted summary judgment in favor of the Plank Group with respect to all underlying torts except wrongful eviction. Thus, there can be no cause of action for civil conspiracy against the Plank Group and Hughes for any claim other than wrongful eviction. However, BRG fails to address the necessary element of malice and points to no facts of record to establish that Hughes or the Plank Group acted solely to injure BRG. Rather, the record tends to show that (1) Hughes and BRG were engaged in a dispute over a lease and the ownership of certain property; (2) Hughes acted in furtherance of his own legitimate business interests; and (3) the Plank Group acted on behalf of its client to protect those interests. As BRG has failed to show that Hughes, Narrow Holdings, or the Plank Group acted with "malice or intent to injure,"

- 19 -

***Strickland***, ***supra***, the trial court did not err in entering summary judgment as to all defendants on BRG's conspiracy claim.

Order affirmed, in part, and reversed, in part. Case remanded for further proceedings consistent with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/25/2025