J. A20007/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALYCIA LANE, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CBS BROADCASTING, INC., | : | No. 1258 EDA 2013 |
| T/A KYW-TV; MICHAEL COLLERAN AND | : | |
| LAWRENCE MENDTE | : | |

Appeal from the Order, March 20, 2013,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. September Term, 2008, No. 03425

| | | |
|---|---|---|
| ALYCIA LANE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| CBS BROADCASTING INC., | : | |
| T/A KYW-TV; MICHAEL COLLERAN, | : | |
| LAWRENCE MENDTE | : | |
| | : | |
| APPEAL OF:  LAWRENCE MENDTE, | : | No. 1416 EDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the Order Dated May 16, 2011,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. September Term, 2008, No. 03425

J. A20007/14

ALYCIA LANE                    :         IN THE SUPERIOR COURT OF
                                    :             PENNSYLVANIA
                     v.           :
                                      :

CBS BROADCASTING, INC.       :
T/A KYW-TV, MICHAEL COLLERAN,  :
LAWRENCE MENDTE           :
                                      :

APPEAL OF: CBS BROADCASTING INC. :
AND MICHAEL COLLERAN,       :         No. 1417 EDA 2013
                                      :
                 Appellant   :


Appeal from the Order Dated May 16, 2011,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. September Term, 2008, No. 03425


BEFORE: FORD ELLIOTT, P.J.E., MUNDY AND MUSMANNO, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED FEBRUARY 05, 2015**

This is a consolidated appeal in the defamation action brought by plaintiff, Alycia Lane ("Lane"). We reverse in part, affirm in part, and remand for further proceedings.

The underlying facts of this matter may be briefly summarized as follows:

> Plaintiff Alycia Lane was employed by CBS as a news anchor from September 2003 to January 2008. See Plaintiff's Amended Complaint, ¶ 9. CBS also employed Defendant Lawrence Mendte ("Mendte") as a news anchor until approximately June 2008. Beginning in 2006, Mendte began illegally accessing both the personal and work email accounts of Plaintiff.[Footnote 1] Mendte used a device known as a "KeyCatcher" to obtain the passwords to

- 2 -

Plaintiff's email accounts. After acquiring the passwords, he repeatedly accessed Plaintiff's email accounts without her authorization. Mendte accessed Plaintiff's passwords and emails when he was both at work and at home. See Mendte Deposition, p. 115-117; Government Criminal Information, p. 3-17. He then would "leak" some of the information he read in Plaintiff's emails to the press and the information would appear in numerous news stories. See Amended Complaint, 18, 23, 25, 28; Mendte Deposition, p. 152-153, 157, 167-168, 207. Plaintiff alleges that Mendte accessed her email accounts without her authorization over 7,000 times throughout a two-year time period. See Amended Complaint, ¶¶ 14, 17. Mendte eventually pled guilty in a criminal case against him to intentionally accessing Plaintiff's email accounts without her authorization.[Footnote 2]

> [Footnote 1] CBS provided to its employees, including Plaintiff, a "work" email account. The Plaintiff also had two personal email accounts -- one with Apple Computer (".mac account") and one with Yahoo!. See Amended Complaint, ¶11.

> [Footnote 2] Specifically, Mendte pled guilty to violating federal criminal statute 18 U.S.C. §§1030(a)(2)(C) and 1030(c)(2)(B)(ii).

Plaintiff claims that she repeatedly informed CBS of her belief that somebody was hacking into her email accounts. Despite her repeated complaints, Plaintiff alleges that CBS did not perform a reasonable investigation into the hacking. Plaintiff filed the present lawsuit in September 2008 against, inter alia, CBS and Mendte. In Count VII of the Amended Complaint, Plaintiff brought a claim for negligence against CBS. Plaintiff claims that CBS had a duty to protect Plaintiff from Mendte's criminal conduct and to investigate the allegation of criminal conduct made by Plaintiff. See Plaintiff's Omnibus

> Opposition to Summary Judgment, p. 65. Plaintiff alleges that as a direct and proximate result of CBS' negligence, Plaintiff suffered reputational damage and financial losses arising from that reputational damage. See Plaintiff's Amended Complaint, ¶ 160. CBS is now moving for summary judgment on Plaintiff's negligence claim.

Trial court opinion, 5/16/11 at 1-2.

Lane also brought a claim for defamation against CBS based upon the following January 8, 2008 statement, read on the air:

> CBS 3 announced today that Alycia Lane has been released from her contract. Lane is facing a charge of assaulting a police officer in New York last month, a charge she categorically denies.
>
> CBS 3 President and General Manager Michael Colleran issued the following statement, it says quote:
>
> > After assessing the overall impact of a series of incidents resulting from judgments she has made, we have concluded that it would be impossible for Alycia to continue to report the news as she, herself, has become the focus of so many news stories. We wish to make clear that we are not prejudging the outcome of the criminal case against Alycia that is pending in New York. We understand that Alycia expects to be fully vindicated in that proceeding. We hope that is the case and we wish her the best in all her future endeavors.

On December 12, 2012, the Honorable Allan L. Tereshko dismissed all claims against CBS, and some claims against Mendte, based on spoliation of evidence. Specifically, Judge Tereshko found that Lane had intentionally

disposed of her 2005 Apple G4 laptop computer ("the 2005 Laptop"), thereby depriving CBS and Mendte of any meaningful defense. Judge Tereshko determined that Lane's case was overwhelmingly based upon documents originated and stored in her 2005 Laptop. Also on December 12, 2012, Judge Tereshko granted summary judgment for CBS on Lane's claims for defamation and false light. On March 20, 2013, the remaining claims against Mendte were dismissed based on spoliation.

We will address Lane's claims on appeal first. She has raised the following issues for our review:

1. Utilizing "strict scrutiny," did the trial court abuse its discretion in dismissing Plaintiff's claims based upon spoliation?

2. Did the trial court err and violate the coordinate jurisdiction rule in reversing the denial of the CBS motion for summary judgment as to defamation and false light?

3. Did the trial court abuse its discretion in excluding the expert testimony of Frank Keel as to defamation?

4. Did the trial court abuse its discretion in denying Plaintiff's motion in limine to preclude at trial the deposition of Officer Bernadette Enchautegui, and Plaintiff's motion for a *de bene esse* deposition of her?

5. Viewed in totality, does Judge Tereshko's conduct evidence an appearance of impropriety?

Lane's brief at 4-5.

"When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion." ***Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division***, 781 A.2d 1263, 1269 (Pa.Super. 2001) (citing ***Croydon Plastics Co. v. Lower Bucks Cooling & Heating***, 698 A.2d 625, 629 (Pa.Super. 1997) (recognizing that "[t]he decision whether to sanction a party, and if so the severity of such sanction, is vested in the sound discretion of the trial court")). Such sanctions arise out of "the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [evidence] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy [the evidence]." ***Mount Olivet***, 781 A.2d at 1269 (quoting ***Nation-Wide Check Corp. v. Forest Hills Distributors, Inc.***, 692 F.2d 214, 218 (1st Cir. 1982)). Our courts have recognized accordingly that one potential remedy for the loss or destruction of evidence by the party controlling it is to allow the jury to apply its common sense and draw an "adverse inference" against that party. ***See Schroeder v. Commonwealth of Pa., Dep't of Transp.***, 551 Pa. 243, 710 A.2d 23, 28 (1998). Although award of summary judgment against the offending party remains an option in some cases, its severity makes it an inappropriate remedy for all but the most egregious conduct. ***See Tenaglia v. Proctor & Gamble, Inc.***, 737 A.2d 306, 308 (Pa.Super. 1999) ("[S]ummary judgment is not mandatory simply because the plaintiff bears some degree of fault for the failure to preserve the product.").

***Creazzo v. Medtronic, Inc.***, 903 A.2d 24, 28-29 (Pa.Super. 2006).

To determine the appropriate sanction for spoliation, the trial court must weigh three factors:

(1) the degree of fault of the party who altered or destroyed the evidence;

> (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.
>
> *Mount Olivet*, 781 A.2d at 1269-70 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994)). In this context, evaluation of the first prong, "the fault of the party who altered or destroyed the evidence," requires consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith. *See Mt. Olivet*, 781 A.2d at 1270. The duty prong, in turn, is established where: "(1) the plaintiff knows that litigation against the defendants is pending or likely; and (2) it is foreseeable that discarding the evidence would be prejudicial to the defendants." *Id.* at 1270-71.

*Id.* at 29.

Here, we note that the defendants never requested production of the 2005 Laptop during discovery. The Honorable Howland Abramson, who presided over this case until his retirement, previously ruled that Lane had satisfied her discovery document production obligations. In addition, from our review of the record, the defendants' argument that there are missing documents including e-mail correspondence between Lane and her friends is, at best, speculative.

Lane explained that her 2005 Laptop "died" and the screen went black, so she purchased a new MacBook laptop ("the 2008 Laptop") from the Apple store. According to Lane, the Apple store transferred data including

photographs from her old laptop to the new one, and she then discarded the 2005 Laptop.[1]

The trial court's conclusion that Lane's case is based upon documents originated and stored in her 2005 Laptop, and that her disposal of the 2005 Laptop was with the intent to destroy material evidence and thus deprive the defendants of any meaningful defense, is simply not tenable. Lane had e-mail accounts with both Yahoo! and Apple (".mac"). The subject of Lane's complaint were the communications stored on her remote, web-accessed Yahoo! and .mac accounts, which were preserved. Those e-mails, which were the subject of an FBI investigation, are stored indefinitely on the Yahoo! and .mac remote servers. Similarly, e-mails sent through Lane's CBS work e-mail account would be stored on CBS servers, not on Lane's laptop. The defendants cannot point to any missing, material evidence from Lane's 2005 Laptop that she intentionally destroyed. Obviously this court is bound by the trial court's credibility determination that Lane intentionally disposed of the 2005 Laptop; however, the suggestion that there are missing e-mails detrimental to Lane's case that were stored only on her

---

[1] Lane described this process as "cloning." The trial court relied on the defense expert, Mr. McGowan's testimony that "cloning" is a "byte-for-byte" transfer of data which would not have been possible because the 2005 Laptop and 2008 Laptop used different computer chips. However, Lane is not a computer expert, she is a layperson, and her use of the term "cloning" may have been inadvertent. Furthermore, Mr. McGowan conceded that files including e-mails and photographs could have been transferred from the 2005 Laptop to the 2008 Laptop.

2005 Laptop is speculation. Under these circumstances, the extreme sanction of dismissal was unwarranted.

Next, Lane argues that Judge Tereshko's grant of summary judgment for CBS ran afoul of the coordinate jurisdiction rule, since Judge Abramson had previously denied CBS's motion for summary judgment.

Initially, we note:

> Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

> ***Grimminger v. Maitra***, 887 A.2d 276, 279 (Pa.Super.2005) (quotation omitted). "[Moreover,] we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." ***Evans v. Sodexho***, 946 A.2d 733, 739 (Pa.Super.2008) (quotation omitted).

***Ford Motor Co. v. Buseman***, 954 A.2d 580, 582-583 (Pa.Super. 2008),

***appeal denied***, 970 A.2d 431 (Pa. 2009).

> [T]his Court has long recognized that judges of coordinate jurisdiction sitting in the same case should not overrule each other['s] decisions. ***See***, ***e.g.***, ***Okkerse v. Howe***, 521 Pa. 509, 516-517, 556 A.2d 827, 831 (1989). This rule, known as the "coordinate jurisdiction rule," is a rule of sound jurisprudence based on a policy of fostering the finality of pre-trial applications in an effort to maintain judicial economy and efficiency. ***Id. See also Golden v. Dion & Rosenau***, 410 Pa.Super. 506, 510, 600 A.2d 568, 570 (1991) (once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable and an appeal therefrom is successfully prosecuted).

***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995).

> In our view, this coordinate jurisdiction rule falls squarely within the ambit of a generalized expression of the "law of the case" doctrine. This doctrine refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. ***See*** 21 C.J.S. Courts § 149a; 5 Am.Jur.2d Appeal and Error § 744. Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court. ***See Joan Steinman, Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in***

> ***Multidistrict Litigation***, 135 U.Pa.L.Rev. 595, 602 (1987) (***citing*** A. Vestal, ***Law of the Case: Single-Suit Preclusion***, 12 Utah L.Rev. 1, 1-4 (1967)) (***hereinafter*** "***Judicial Puzzle***").

***Id.***

> The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy (as does the coordinate jurisdiction rule) but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end. 21 C.J.S. Courts § 149a; ***Judicial Puzzle*** at 604-605.

***Id.***

> Departure from either of these principles is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. ***Compare Musumeci v. Penn's Landing Corporation***, 433 Pa.Super. 146, 151-152, 640 A.2d 416, 419 (1994), ***appeal denied***, 539 Pa. 653, 651 A.2d 540 (1994) (the coordinate jurisdiction rule applies in all cases except where newly-discovered evidence or newly-developed legal authority compel a result different than that reached by the first judge) and ***Commonwealth v. Brown***, 485 Pa. 368, 371, 402 A.2d 1007, 1008 (1979) (where the evidence is substantially the same as that originally ruled upon by the first judge, a second judge commits a ***per se*** abuse of discretion in overruling or vacating the prior order) (citations omitted) ***with*** 21 C.J.S. Courts § 149b (same).

***Id.*** at 1332.

> Our supreme court has recently recognized the continuing validity of the clearly erroneous/manifest injustice exception. [**Zane v. Friends Hospital**, 836 A.2d 25, 29-30 (Pa. 2003)] (upholding the clearly erroneous/manifest injustice exception to the law of the case doctrine in those circumscribed cases in which the prior court's ruling was so clearly erroneous that it would create a manifest injustice that would be, in essence, plainly intolerable, if followed). **See also Ryan v. Berman**, 572 Pa. 156, 813 A.2d 792 (2002); **Gerrow v. John Royle & Sons**, 572 Pa. 134, 813 A.2d 778 (2002) (plurality); **Commonwealth v. Yarris**, 557 Pa. 12, 731 A.2d 581 (1999). The **Zane** court clearly instructs, however, that Pennsylvania courts must be scrupulous in applying the exception so that it does not swallow the rule. First, the prior court's ruling must, in fact, be so palpably erroneous that reversal is almost certain on appeal. **Zane**, **supra** at 243-44, 836 A.2d at 29. Even then, the error must also create such an injustice as to be plainly intolerable. **Id.** at 30.

**Commonwealth v. Viglione**, 842 A.2d 454, 464-465 (Pa.Super. 2004) (**en banc**) (footnote omitted). **See also Gerrow**, 813 A.2d at 782 ("In some circumstances, however, application of the rule can 'thwart the very purpose the rule was intended to serve, **i.e.**, that judicial economy and efficiency be maintained.'"), quoting **Salerno v. Philadelphia Newspapers, Inc.**, 546 A.2d 1168, 1170 (Pa.Super. 1988).

Judge Tereshko revisited Judge Abramson's ruling based, in part, on changed circumstances, **i.e.**, dismissal of the case on spoliation grounds, and exclusion of Lane's expert report on defamation. For the reasons discussed above, we have already determined that outright dismissal of the case based on spoliation was error. As explained below, we agree with the

ruling regarding Lane's expert. At the time Judge Abramson ruled, the defendants' challenge to the admissibility of Keel's report had not yet been decided by that court. It was assumed that Keel was going to testify at trial. However, Judge Abramson did not explicitly rely on Mr. Keel's expert report. Rather, Judge Abramson, citing Michael Colleran's deposition testimony, stated as his reason for denying summary judgment that there were genuine issues of material fact based on his interpretation of Colleran's testimony as to whether CBS entertained serious doubts as to the truth of the statement.[2]

---

[2] Judge Abramson's May 12, 2011 order provided, in relevant part:

> The Court finds that the statement at issue in this case (the "Statement") is capable of defamatory meaning, given the context in which the Statement was made. Genuine issues of material fact exist regarding whether the Statement was understood as defamatory by the recipients of the Statement. In other words, genuine issues of material fact exist as to whether an average person could conclude from the Statement that Plaintiff committed the alleged actions in New York, which underlay the criminal case.
>
> Further, since Plaintiff is a public figure, she "must prove that the defendant published the offending statement with 'actual malice,' i.e., with knowledge that the statement was false or with reckless disregard of its falsity." Weaver v. Lancaster Newspapers, Inc., 926 A.2d 899, 903 (Pa. 2007) (citations omitted). "[F]or the purposes of establishing that a defendant acted with reckless disregard for the truth, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id.
>
> The Court finds that Plaintiff has produced sufficient evidence of actual malice to survive summary judgment. Plaintiff has pointed to specific deposition

Therefore, the record on the summary judgment defamation issue was not materially different and without more, we would find a violation of the coordinate jurisdiction rule.

However, Judge Tereshko also found that permitting the case to go to trial on the basis of CBS's statement would result in a manifest injustice, and that Judge Abramson's ruling denying CBS's summary judgment motion was clearly erroneous. According to Judge Tereshko, the statement is not capable of a defamatory meaning as a matter of law.

> "Defamation is a communication which tends to harm an individual's reputation so as to lower him or her in the estimation of the community or deter third persons from associating or dealing with him or her." ***Elia v. Erie Insurance Exchange***, 430 Pa.Super. 384, 634 A.2d 657, 660 (1993). Only statements of fact, not expressions of opinion, can support an

---

> testimony in the record which creates genuine issues of material fact as to whether CBS entertained "serious doubts" as to the truth of the Statement. (See, e.g., Calabria Dep., p. 429; Colleran Dep., p. 572-575, 623-629). Therefore, CBS's Motion for Summary Judgment on Plaintiff's defamation claim is denied." (Order, 5/12/11 at 1-2 n.1.)

We note that portions of Colleran's deposition testimony cited by Lane are taken out of context, to create an impression that Colleran subjectively believed Lane was guilty of criminal misconduct in New York. In fact, Colleran testified that he had no idea whether the allegations were true, that Lane struck a police officer and made a homophobic slur. (RR at 2014.) However, this is not relevant to the alleged defamatory content of the CBS statement. Viewing Colleran's testimony in its totality, it is clear that he simply felt that given the news stories concerning Lane, including the pending charges in New York, she had lost credibility as a television journalist and CBS could not continue to employ her. The CBS statement does not accuse Lane of criminal misconduct, in fact CBS noted that it was not prejudging Lane and that it hoped she would be exonerated.

> action in defamation. ***Id.*** In a defamation case, a plaintiff must prove: "(1) The defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." ***Porter v. Joy Realty, Inc.***, 872 A.2d 846, 849 n. 6 (Pa.Super. 2005), quoting, 42 Pa.C.S.A. § 8343(a). ***See also, Weber v. Lancaster Newspapers, Inc.***, 878 A.2d 63 (Pa.Super. 2005).

***Moore v. Cobb-Nettleton***, 889 A.2d 1262, 1267 (Pa.Super. 2005).

> It is for the trial court to determine as a matter of law whether a statement is one of fact or opinion, as well as to determine whether a challenged statement is capable of having defamatory meaning. ***Elia***, 634 A.2d at 660, citing ***Braig v. Field Communications***, 310 Pa.Super. 569, 456 A.2d 1366 (1983), ***cert. denied***, 466 U.S. 970, 104 S.Ct. 2341, 80 L.Ed.2d 816 (1984). "A communication is . . . defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." ***Maier v. Maretti***, 448 Pa.Super. 276, 671 A.2d 701, 704 (1995), ***appeal denied***, 548 Pa. 637, 694 A.2d 622 (1997), citing ***Gordon v. Lancaster Osteopathic Hospital Association***, 340 Pa.Super. 253, 489 A.2d 1364 (1985). Additionally, the court should "consider the effect the statement would fairly produce, or the impression it would naturally engender, in the minds of average persons among whom it is intended to circulate." ***Maier***, 671 A.2d at 704, citing ***Rybas v. Wapner***, 311 Pa.Super. 50, 457 A.2d 108 (1983).

***Constantino v. University of Pittsburgh***, 766 A.2d 1265, 1270 (Pa.Super.

2001). "It is clear that expressions of pure opinion that rely on disclosed

facts are not actionable." ***Feldman v. Lafayette Green Condominium Ass'n***, 806 A.2d 497, 501 (Pa.Cmwlth. 2002) (citations omitted).

It is not disputed that Lane, as a newscaster, was a public figure.

> [T]he appropriate standard of fault depends on whether the plaintiff is a public or private figure. If the plaintiff is a public official or public figure, and the statement relates to a matter of public concern, then to satisfy First Amendment strictures the plaintiff must establish that the defendant made a false and defamatory statement with actual malice. In contrast, states are free to allow a private-figure plaintiff to recover by establishing that the defendant acted negligently rather than maliciously.

***American Future Systems, Inc. v. Better Business Bureau of Eastern Pennsylvania***, 923 A.2d 389, 400 (Pa. 2007), ***cert. denied***, 552 U.S. 1076 (2007) (citations and parentheticals omitted).[3]

---

[3] As used in this discussion, the term "actual malice" (sometimes shortened to "malice") is a term of art that refers to a speaker's knowledge that his statement is false, or his reckless disregard as to its truth or falsity. Thus, it implies at a minimum that the speaker "'entertained serious doubts about the truth of his publication,' . . . or acted with a 'high degree of awareness of . . . probable falsity.'" ***Masson v. New Yorker Magazine***, 501 U.S. 496, 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991) (quoting ***St. Amant v. Thompson***, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968); ***Garrison v. Louisiana***, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964)). This term "should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." ***Id.***

***Id.*** at 76 n.6, 923 A.2d at 395 n.6.

Here, CBS stated, after noting that Lane was facing criminal charges in New York, a true statement at the time, that "it would be impossible for Alycia to continue to report the news, as she herself has become the focus of so many news stories." This merely conveys an opinion, which is not actionable as a matter of Pennsylvania law. While Lane argues that the statement somehow suggests or implies that she committed criminal acts, the statement clearly relates the fact that Lane <u>denies</u> she committed any crime, and that she expects to be "fully vindicated." The statement also expresses CBS's hope that Lane will be fully vindicated. Lane's interpretation contradicts the statement's plain terms and clear meaning. The statement makes clear that there had been no determination of guilt or innocence and that CBS hoped Lane would be cleared of any charges. There is simply no evidence that CBS knew anything in the statement was false or probably false, or that the statement was made with actual malice. In fact, Lane admitted that taken at face value, there was nothing false about CBS's statement. (Lane deposition, 1/21/11 at 604-608.) While Lane claims the statement implies guilt, as the trial court states, innuendo can only support a defamation action where it is warranted, justified and supported by the publication. (Trial court opinion and order, 12/12/12 at 33, citing ***Livingston v. Murray***, 612 A.2d 443, 449 (Pa.Super. 1992), ***appeal denied***, 617 A.2d 1275 (Pa. 1992)). Lane's argument that the statement implies she committed crimes is directly contrary to its plain terms. Lane

failed to establish that the publication was capable of defamatory meaning.[4]

As the appellate court, we find Judge Abramson's prior ruling was so palpably erroneous that reversal would be almost certain on appeal. As such, the prior court's ruling was clearly erroneous and an exception to the coordinate jurisdiction rule applied.[5]

In her third assignment of error, Lane contends that CBS should not have been permitted to use Officer Bernadette Enchautegui's deposition where Lane did not have a full and fair opportunity to cross-examine. During Officer Enchautegui's deposition concerning the New York incident, plaintiff's counsel moved to strike on the basis of CPL § 160.50, which provides for the sealing of records relating to the arrest and prosecution upon the termination of a criminal proceeding in the favor of the accused. According to plaintiff's counsel, Officer Enchautegui was not allowed to testify to documents in the police file, and could even be exposing herself to criminal liability. (Trial court opinion, 1/27/12 at 3, citing notes of

---

[4] It follows that Lane's claim for false light also cannot be maintained. To make out a false light invasion of privacy claim, Lane would have to prove, *inter alia*, that "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) Torts, § 652E(b). Here, there was nothing false about CBS's statement announcing Lane's termination.

[5] "Moreover, it is a well-settled doctrine in this Commonwealth that a trial court can be affirmed on any valid basis appearing of record." *In re T.P.*, 78 A.3d 1166, 1170 (Pa.Super. 2013), *appeal denied*, 93 A.3d 463 (Pa. 2014) (citations omitted).

testimony, Enchautegui deposition, 1/10/11 at 100-105.) At that point, Officer Enchautegui requested counsel and asked that the deposition be adjourned.

As the trial court states, the privilege afforded by Section 160.50 is not absolute and is waived where the accused makes the criminal prosecution an issue in a civil action. (*Id.* at 6.) That is clearly the case here. The trial court explains,

> In the instant matter, Plaintiff put the details of her arrest squarely at issue as she has alleged that CBS defamed her by conveying to the viewing public that CBS had determined that Plaintiff was guilty of the crime charged in New York and terminated her contract as a result. In doing so, Plaintiff has waived the privilege conferred by CPL § 160.50, and the threats leveled at Officer Enchautegui during the deposition by Plaintiff's counsel were baseless.

*Id.* We agree. Lane was not unfairly denied an opportunity to cross-examine Officer Enchautegui, where her own frivolous objections caused Officer Enchautegui to request counsel and stop the proceedings.

Next, Lane argues that the trial court abused its discretion by precluding the testimony of her expert on the defamation issue, Frank J. Keel ("Keel"). "The admission of expert testimony is a matter of discretion [for] the trial court and will not be remanded, overruled or disturbed unless there was a clear abuse of discretion." *Blicha v. Jacks*, 864 A.2d 1214, 1218 (Pa.Super. 2004).

> An expert witness is a witness who possesses knowledge not within ordinary reach or

- 19 -

understanding, and who, because of this knowledge, is specially qualified to address a particular subject. ***Steele v. Shepperd***, 411 Pa. 481, 192 A.2d 397 (1963). When a witness is offered as an expert, the first question the trial court should ask is whether the subject to be addressed by the witness is "so distinctly related to some science, profession, business or occupation" that it is beyond the understanding of the average layperson. ***McDaniel v. Merck, Sharp & Dohme***, 367 Pa.Super. 600, 533 A.2d 436, 440 (1987), ***appeal denied***, 520 Pa. 589, 551 A.2d 215 (1998) (quoting ***Dambacher v. Mallis***, 336 Pa.Super. 22, 485 A.2d 408, 415 (1984), ***appeal dismissed***, 508 Pa. 643, 500 A.2d 428 (1985)). If the answer to that question is "Yes," the trial court must then ascertain whether the proposed witness has "sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in [the] search for truth." ***Id.***

***Bergman v. United Services Auto. Ass'n***, 742 A.2d 1101, 1105 (Pa.Super. 1999).

Necessity is fundamental to the admissibility of opinion evidence. ***Cooper v. Metropolitan Life Ins. Co.***, 323 Pa. 295, 186 A. 125 (1936). If the facts can be fully and accurately described to the fact-finder, who, without special knowledge or training, is able to estimate the bearing of those facts on the issues in the case, then the opinions of witnesses are inadmissible because they are unnecessary in the search for truth. ***Whyte v. Robinson***, 421 Pa.Super. 33, 617 A.2d 380 (1992). The trial court must determine whether the necessity for the testimony exists and whether the witness is qualified to testify. ***Ruzzi v. Butler Petroleum Co.***, 527 Pa. 1, 588 A.2d 1 (1991); ***Cooper***, ***supra***.

***Id.***

This Court has also emphasized that expert testimony should not invite the fact-finder to

> abdicate its responsibility to ascertain and assess the facts and, instead, defer to the expert's opinion. ***Commonwealth v. Montavo***, 439 Pa.Super. 216, 653 A.2d 700 (1995), ***appeal denied***, 541 Pa. 636, 663 A.2d 689 (1995).  The primary purpose of the expert testimony must be to assist the trier of fact in understanding complicated matters, not simply to assist one party or another in winning the case. ***Panitz v. Behrend***, 429 Pa.Super. 273, 632 A.2d 562 (1993).

*Id.*

Lane argues that Keel's testimony was necessary to put the CBS statement into context, and to explain how it relied on undisclosed defamatory facts.  In the introduction to his expert report, Keel states that, "This opinion is limited to addressing the effect that the Statement at issue would have on the average recipient or listener, and the public perception of the Statement with respect to the average members of the community and general public."  (Trial court opinion, 2/16/12 at 2.)  Keel then goes on to conclude that, ***inter alia***:  the statement tended to harm Lane's reputation in the community and deter third persons from dealing with her; the statement conveys that Lane was guilty of a felony and had exhibited criminal bad judgment, such that she could not possibly continue to work in her chosen field; the statement conveys that Lane had credibility issues so severe it was impossible for her to continue to practice her profession; and the statement was, in fact, untrue.  (***Id.*** at 2-3.)

We agree with the trial court that permitting Keel to testify as to the statement's effect on the average listener would invade the province of the

jury. Whether the statement has the effect of conveying to the average viewer that Lane was guilty of a felony is not beyond the knowledge or experience of the average layperson. As the trial court remarked, "this Court is presented with the proposition that an Expert is required to tell the average person on a jury what the average person would think about Defendant's Statement." (*Id.* at 3 (emphasis deleted).) Keel's proposed testimony would only serve to confuse the jury and unduly influence them. The trial court did not abuse its discretion in refusing to permit this testimony.

Finally, Lane argues that Judge Tereshko's conduct in this matter evidences an appearance of impropriety and bias. Primarily, Lane's argument in this regard focuses on Judge Tereshko's adverse rulings including on the spoliation issue and revisiting Judge Abramson's denial of CBS's summary judgment motion. While we conclude the spoliation ruling was in error, and we express concerns regarding the trial court's findings in this regard, we cannot say that there is an appearance of impropriety or bias in the defendants' favor.

We now turn to CBS's cross-appeal.[6] First, CBS argues that the trial court erred in denying its motion for summary judgment on Lane's

---

[6] Lane has filed motions to quash both CBS's and Mendte's cross-appeals, arguing that because they prevailed in the court below, they are not "aggrieved parties" with standing to appeal. We disagree. Neither CBS nor Mendte received all the relief they requested, *e.g.*, the trial court denied summary judgment on Lane's negligence claim against CBS. While a

negligence claim. Lane brought a claim under § 213 of the Restatement (Second) of Agency, alleging that CBS negligently failed to prevent Mendte's tortious conduct of hacking into Lane's e-mails. CBS argues that the trial court failed to identify any legal duty CBS owed to Lane.

Initially, we observe that in addition to arguing lack of a legal duty to Lane, CBS claims that Lane's negligence cause of action is statutorily barred by the Workers' Compensation Act; that there was no evidence Lane was harmed by Mendte's conduct; and that the negligence claim is barred by the statute of limitations. None of these particular issues were raised in CBS's concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b); therefore, they are deemed waived. In CBS's Rule 1925(b) statement, it alleged only that the trial court erred by denying its summary judgment motion as to Lane's theory of negligence based upon the Restatement of Agency (Second) § 213. It is firmly established that issues not raised in a Rule 1925(b) statement are waived on appeal. Pa.R.A.P. 1925(b)(4)(vii).

Section 213 provides,

_____

protective cross-appeal is not required under Pa.R.A.P. 511, it is permitted where CBS and Mendte were clearly "aggrieved" by particular rulings in the trial court. **See Pittsburgh Const. Co. v. Griffith**, 834 A.2d 572, 588-590 (Pa.Super. 2003) (the prevailing party properly cross-appealed where it was aggrieved by a judgment that did not grant it the full contractual relief it sought).

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a)   in giving improper or ambiguous orders of [sic] in failing to make proper regulations; or
>
> (b)   in the employment of improper persons or instrumentalities in work involving risk of harm to others:
>
> (c)   in the supervision of the activity; or
>
> (d)   in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

The Comment states that, "Liability exists only if all the requirements of an action of tort for negligence exist." This court has commented, "these Restatement sections do no more than to restate the existing tort law of Pennsylvania. They impose on an employer the duty to exercise reasonable care in selecting, supervising and controlling employees." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa.Super. 2000), quoting *R.A. v. First Church of Christ*, 748 A.2d 692 (Pa.Super. 2000). *See also Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 107 (Pa.Super. 1998) ("Our reasoning that an employer may be liable directly for wrongful acts of its negligently hired employee comports with the general tort principles of negligence long recognized in this jurisdiction."), citing *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418 (Pa. 1968).

CBS has a duty to hire and supervise its employees to prevent foreseeable harm. Instantly, there was evidence that CBS had either actual or constructive notice of the harm that Mendte was to cause Lane. As Judge Abramson found in denying CBS's motion for summary judgment:

> The Court finds that [Lane] has produced sufficient evidence to proceed on her Section 213 theory of negligence with respect to her *personal* emails.[7] Paragraph (d) of Section 213 states that an employer is liable "in permitting or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents upon premises or with instrumentalities under his control." In this instance, it is undisputed that Defendant Mendte illicitly accessed Lane's personal email accounts, and that this accessing occurred (in part) on CBS property and utilizing CBS' chattels. Moreover, while CBS may not have known that Mendte was the perpetrator, the record indicates that a genuine issue of material fact exists as to whether CBS had "constructive" notice that one of its employees was committing tortious actions on its premises and using its chattels.

Opinion and Order, 5/16/11 at 15-16 (footnote omitted) (emphasis in original). The trial court did not err in denying CBS's motion for summary judgment on Lane's negligence claim.

Secondly, CBS complains that the trial court denied its motion for sanctions under Pa.R.C.P. 4019 for Lane's conduct relative to the Enchautegui deposition. "Discovery matters are within the discretion of the trial court, and, therefore, we employ an abuse of discretion standard of

---

[7] The trial court refused to recognize a personal privacy interest in Lane's corporate e-mail.

review." ***McNeil v. Jordan***, 814 A.2d 234, 241 (Pa.Super. 2002), ***reversed on other grounds***, 894 A.2d 1260 (Pa. 2006), citing ***Luszczynski v. Bradley***, 729 A.2d 83, 87 (Pa.Super. 1999). We can discern no basis for disturbing the trial court's ruling in this regard, which would seem to be uniquely within the trial court's discretion. In fact, there was some indication that Officer Enchautegui had been led to believe that she was represented by counsel for CBS, which was untrue, and this was at least part of the reason she refused to continue with the deposition. In any event, it could be argued that Lane's conduct worked to CBS's benefit where we have held that the deposition testimony would have been admissible in the defamation action despite lack of cross-examination.

Finally, we turn to Mendte's arguments on cross-appeal. Mendte appeals the May 16, 2011 order granting partial summary judgment in favor of Lane on Counts III and XIII (Invasion of Privacy -- Intrusion Upon Seclusion), IV (Tortious Interference with Prospective Contractual Relations), and V (Invasion of Privacy -- Publicity Given to Private Life). Judge Abramson granted summary judgment on these counts as to liability only, limited to Lane's personal e-mails, with causation and damages to be determined at trial.

Mendte had pled guilty to violating 18 U.S.C. §§ 1030(a)(2)(C) and 1030(c)(2)(B)(ii), which require the government to prove that the defendant (1) intentionally; (2) accessed a computer without authorization; and

(3) thereby obtained information from any protected computer; (4) the conduct involved an interstate communication; and (5) the defendant did so in furtherance of any criminal or tortious act in violation of the Constitution or laws of the United States or any state. (Opinion and Order, 5/16/11 at 1 n.1.) Pursuant to his guilty plea in federal court, Mendte admitted the underlying facts, including that from January to March 2008, he accessed Lane's personal e-mail accounts without authorization more than 500 times. (***Id.***) These included e-mails between Lane and her attorneys discussing Lane's criminal case in New York. (***Id.***) Mendte admitted that he read these e-mails and leaked information to the press. (***Id.***) In addition, Mendte admitted that he attempted to undermine Lane's efforts to achieve a favorable disposition of her criminal case in New York, including sending an anonymous letter to the New York City district attorney's office. (***Id.*** at 1-2 n.1.) Judge Abramson concluded that these facts constitute the torts set forth in the above counts and Mendte is judicially estopped from denying or disputing these facts at trial. (***Id.*** at 2 n.1.)

> The doctrine of judicial estoppel holds that [a]s a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained. The purpose of this doctrine is to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires.

***Bugosh v. Allen Refractories Co.***, 932 A.2d 901, 912 (Pa.Super. 2007), ***appeal dismissed as improvidently granted***, ***Bugosh v. I.U. North***

***America, Inc.***, 971 A.2d 1228 (Pa. 2009) (quotation marks and citations omitted).

Mendte admitted to the above facts as part of his guilty plea and is now estopped from denying them in a subsequent civil trial. Notably, Judge Abramson found that the issues of causation and damages suffered, if any, were never determined and that Mendte would not be precluded from litigating those issues in the present case. Therefore, to the extent Mendte argues that Lane suffered no damages from his tortious interference with prospective contractual relations where the criminal charges in New York were ultimately dismissed, he will have the opportunity to litigate that issue despite his previous admissions in criminal court. Judge Abramson did not err in granting partial summary judgment for Lane, limited to liability.

Affirmed in part and reversed in part. Remanded for further proceedings consistent with this memorandum. CBS's application for sanctions, filed April 7, 2014, and joined by Mendte on April 24, 2014, is hereby denied. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2015

J. A20007/14